**Amy G. HORWITZ, Plaintiff,**

v.

**L & J.G. STICKLEY, INC., Defendant.**

**No. 99–CV–1283.**

United States District Court,
N.D. New York.

Nov. 30, 2000.

Law Office of Joseph Hein, Joseph Hein, of counsel, Altamont, for plaintiff.

Bond, Schoeneck & King, L.L.P., Louis DiLorenzo, of counsel, Syracuse, for defendant.

**MEMORANDUM—DECISION
& ORDER**

McAVOY, District Judge.

Plaintiff Amy Horwitz commenced the instant action pursuant to the Americans

with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et. seq.*, and the New York State Human Rights Law ("HRL"), N.Y. EXEC. LAW § 296, claiming that she was terminated from her position with Defendant on account of her disability. Presently before the Court is Defendant's motion for summary judgment pursuant to FED. R. CIV. P. 56 seeking dismissal of the Complaint in its entirety.

## I. BACKGROUND

In January 1999, Defendant determined that it had openings for both a full-time and part-time receptionist at the company's Albany location. On or about January 18, 1999, Plaintiff sent a letter to Defendant expressing her interest in the position. Plaintiff went through a series of interviews during which time she met with Assistant Manager Dana Pratt and Retail Operations Manager Kristine Scotto ("Scotto"). On February 28, 1999, Plaintiff interviewed with the new incoming General Manager, Steven Coons ("Coons"). Scotto then spoke with Regional Operations Manager Edward Audi ("Audi"), who authorized Scotto to hire Plaintiff. Defendant determined that Plaintiff would be hired for the part-time receptionist position.

On March 1, 1999, Coons contacted Plaintiff and extended her an offer for the part-time position. On March 2, 1999, Plaintiff accepted the offer. On March 3, 1999, Plaintiff went to Defendant's place of business in Colonie, New York to fill out certain post-hire paperwork, including a post-hire medical questionnaire (the "medical questionnaire" or the "questionnaire"). On the form Plaintiff indicated, among other things, that she suffered from bipolar disease for which she takes medication and had twice been hospitalized. Plaintiff did not, however, completely fill out the medical questionnaire. Plaintiff failed to complete the question asking whether she ever had a workers' compensation injury or illness or collected short-term disability benefits due to a non-work related injury or illness. According to Plaintiff, she did not complete this section because she had collected workers' compensation for her bipolar disorder and was afraid that such information would be used against her by Defendant. Plaintiff also failed to check a box indicating that she did not suffer from any of eleven listed diseases, although she claims that she did not see that question. The parties dispute whether Plaintiff completed the substance abuse notification and consent form.[1] Coons recognized that Plaintiff had not fully completed the medical questionnaire and advised her that it would have to be completed at a later time.

The questionnaire was sent to the company nurse, Susan Jenner ("Jenner"), who reviewed it. In addition to the incomplete information, Jenner found what she believed to be an inconsistency. In response to the question whether Plaintiff had been treated by a physician within the past twelve months, Plaintiff stated that she had not, although she had been treated by a psychiatrist and was taking medication.[2]

Defendant scheduled Plaintiff to commence work on March 9, 1999, at which time she was to complete the medical questionnaire. On the morning of March 9, 1999, Plaintiff went to work and filled out the questionnaire. The questionnaire was then sent to Jenner for review. Jenner noticed that Plaintiff again failed to check the "none" box after the list of diseases. Jenner continued to question whether Plaintiff could be taking medications without being under the continuing treatment of a physician. Otherwise, the questionnaire was fully completed, including the section regarding any prior workers' compensation injuries.

---

1. Defendant contends Plaintiff did not fill out this form on March 3, while Plaintiff insists that she did.

2. Plaintiff states that she believes a psychiatrist to be different from a physician.

Jenner was concerned about the missing information and apparent inconsistencies and, therefore, brought the questionnaires to the attention of Beverly Manning ("Manning"), Human Resources Coordinator. Manning, in turn, brought the questionnaires to Audi. This was the first time Audi had ever been provided with Plaintiff's medical information. Because Audi was busy at the time, he instructed that Plaintiff be sent home from work that day and that they would get back to her. Audi then determined that, based on the discrepancies and omissions, Plaintiff had responded untruthfully and incompletely on the medical questionnaires. Audi, therefore, decided to terminate her employment. Plaintiff was then informed that her employment had been terminated. According to Plaintiff, Defendant told her that the position no longer existed.

Plaintiff then filed a charge of discrimination with the New York State Division of Human Rights ("DHR"). Ultimately, the DHR dismissed the charge for administrative convenience. Plaintiff then commenced the instant litigation claiming that she was discriminated against on account of her disability in violation of the ADA and the HRL. Presently before the Court is Defendant's motion for summary judgment pursuant to FED. R. CIV. P. 56 seeking dismissal of the Complaint in its entirety on the grounds that: (1) Plaintiff does not have a disability within the meaning of the ADA; and (2) she is unable to establish that she was terminated because of her alleged disability.

## II. DISCUSSION

### A. Summary Judgment Standard

The Court has set forth the appropriate summary judgment standard in employment discrimination cases in several reported cases and will apply that same standard to Defendant's motion. *See Roman v. Cornell Univ.*, 53 F.Supp.2d 223, 232–33 (N.D.N.Y.1999); *Phipps v. New York State Dep't of Labor*, 53 F.Supp.2d 551 (N.D.N.Y.1999); *Riley v. Town of Bethle-*

*hem*, 44 F.Supp.2d 451, 458 (N.D.N.Y. 1999).

### B. Right to Sue

The evidence before the Court reveals that Plaintiff filed a charge of discrimination before the DHR that contained a federal charge number, thereby suggesting that a charge of discrimination was also filed with the Equal Employment Opportunity Commission ("EEOC"). Upon Plaintiff's request, the DHR dismissed the charge of discrimination on grounds of administrative convenience so Plaintiff could pursue her state HRL claim in court. There is no indication, however, that Plaintiff ever received a right to sue letter from the EEOC. *See* 42 U.S.C. § 2000e–5(f)(1); 42 U.S.C. § 12117(a). Accordingly, had the issue been raised by Defendant, the Court would have found the instant action to be premature and dismissed the matter without prejudice for failure to exhaust administrative remedies. *See Criales v. American Airlines, Inc.*, 105 F.3d 93, 95 (2d Cir.1997), *cert. denied*, 522 U.S. 906, 118 S.Ct. 264, 139 L.Ed.2d 190. Because, however, Defendant failed to raise this issue, it has been waived. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982); *Arroyo v. WestLB Admin., Inc.*, 213 F.3d 625, 2000 WL 562425, at *1 (2d Cir.2000); *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 n. 5 (2d Cir.2000). The Court will, therefore, turn to the merits of Defendant's motion.

### C. The ADA Scheme

"As the Supreme Court recently reiterated, '[t]he ADA prohibits discrimination by covered entities, including private employers, against qualified individuals with a disability. Specifically, it provides that no covered employer "shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to ... [the] discharge of employees...."'" *Heyman v. Queens Village Comm. for Mental Health for Ja-*

*maica Community Adolescent Program, Inc.,* 198 F.3d 68, 71 (2d Cir.1999) (quoting *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 119 S.Ct. 2139, 2144, 144 L.Ed.2d 450 (1999) (quoting 42 U.S.C. § 12112(a))). In analyzing an ADA claim, courts apply the familiar *McDonnell Douglas* burden shifting analysis. *See id.; see also McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

Briefly stated, under that scheme, Plaintiff has the burden of demonstrating a *prima facie* case of disability discrimination. If she does so, the burden of production shifts to Defendant to articulate a legitimate, non-discriminatory reason for its actions. The burden then reverts to Plaintiff to prove, by a preponderance of the evidence, that the adverse employment action was taken because of her disability. Plaintiff may do this by demonstrating that Defendant's proffered reason is a pretext for unlawful discrimination, which might suggest that discrimination was the real reason for the employment action, or by relying upon the evidence establishing her *prima facie* case. *See Heyman,* 198 F.3d at 72.

### 1. The *Prima Facie* Case

"To establish a prima facie case of discrimination under the ADA, plaintiff must show by a preponderance of the evidence that (1)[her] employer is subject to the ADA; (2)[s]he was disabled within the meaning of the ADA; (3)[s]he was otherwise qualified to perform the essential functions of [her] job, with or without reasonable accommodation; and (4)[s]he suffered adverse employment action because of [her] disability." *Id.*

Here, Defendant concedes it is subject to the ADA. Thus, the next question is whether Plaintiff is disabled within the meaning of the ADA.

### a. Whether Plaintiff has a Disability Within the Meaning of the ADA

Defendant argues that, taking into consideration Plaintiff's ameliorative measures (her medication and therapy), she is not substantially limited in any major life activity. Defendant points to Plaintiff's medical questionnaire wherein she wrote:

Diagnosed with bi-polar disorder for which I take medication. I have been hospitalized twice due to decompression—for which stabilization and drug trials were needed. I am stable and fully functional with medication and therapy.

Defendant also points to Plaintiff's deposition testimony where the following exchange occurred:

Q. What is the disability that you have which substantially limits some major life activities?

A. I'm diagnosed with bipolar disorder....

Q. What is the substantially limits major life activities, when is that limited [sic]?

A. During times of peak mania or peak depression which are characteristics of the illness, all life functions are affected. Activities are affected including ability to work, ability to care for one's self, ability to socialize.

Q. On your medical certification you indicated that you're diagnosed with bipolar disorder for which you take medication.... [and that you are] stable and fully functional with medication and therapy. Was that accurate at the time you applied for the job?

A. Yes.

Q. So at the time there wasn't any limitation of major life activities provided you took the medication?

A. That's correct....

Q. And Number 9 [of the Complaint] says you have a record of a disability which substantially limits major life activities. Is that the bipolar disorder?

A. Yes.

Pl. Dep., at 127–28.

Plaintiff responds that she is disabled within the meaning of the ADA because, at times, her treatment is not effective and

she experiences depression and mania and that, during periods of high stress, she has been known to experience the symptoms characteristic of bipolar disorder. *See* Horwitz Aff., ¶ 10. According to Plaintiff, her bipolar disorder renders her substantially limited in the major life activities of working, caring for herself, and socializing. Plaintiff states that she is eligible for social security benefits, thereby indicating that she is substantially limited in her ability to work. Finally, Plaintiff contends that she has a record of a disability, which record consists of the medical questionnaire.

Pursuant to the ADA:

The term "disability" means, with respect to an individual-

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). There is little doubt that bipolar disorder can constitute an impairment. *See Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir.1999). The question, then, is whether that impairment constitutes a disability under one of the above-cited statutory definitions. *See Schaefer v. State Ins. Fund*, 207 F.3d 139, 142 (2d Cir.2000).

### (1) Physical or Mental Impairment That Substantially Limits a Major Life Activity

▆ As noted, Plaintiff contends that her bipolar disorder substantially limits her ability to engage in the major life activities ·of working, caring for herself, and socializing.[3] To fall within this first definition, the impairment must substantially limit one of these major life activi-

ties. This means that the limitation must be " 'specified to a large degree.' " *Sutton*, 119 S.Ct. at 2150 (quoting Webster's Third New Int'l Dict. 2280 (1976)); *see also* THE RANDOM HOUSE DICT. OF THE ENGLISH LANGUAGE 1418 (Unabridged Ed.1979) (defining "substantial" as "of ample or considerable amount."). Under EEOC regulations, "substantially limited" is defined as:

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

The regulations further state that:

The following factors should be considered in determining whether an individual is substantially limited in a major life activity:

(i) The nature and severity of the impairment;

(ii) The duration or expected duration of the impairment; and

(iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

With respect to the major life activity of working-

(i) The term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial

---

**3.** The Court assumes, without deciding, that socializing is a major life activity. However, the Court seriously doubts that socializing qualifies as a major life activity. *See Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 642 (2d Cir.1998), *cert. denied*, 526 U.S. 1018,

119 S.Ct. 1253, 143 L.Ed.2d 350 (1999); *Francis v. Chemical Banking Corp.*, 62 F.Supp.2d 948, 963 (E.D.N.Y.1999); *but see McAlindin v. County of San Diego*, 192 F.3d 1226 (9th Cir.1999), *cert. denied*, —— U.S. ——, 120 S.Ct. 2689, 147 L.Ed.2d 961 (2000).

limitation in the major life activity of working.

29 C.F.R. § 1630.2(j). Of course, under recent Supreme Court precedent, determining whether an impairment substantially limits a major life activity must include consideration of the effects of any corrective measures. *See Sutton,* 119 S.Ct. at 2146.

Here, the evidence before the Court demonstrates that Plaintiff has been diagnosed with bipolar disorder that required her to be hospitalized on two separate occasions, that one of these hospitalizations was for two weeks in 1996,[4] and that following the hospitalization, she was admitted to a psychiatric center for six weeks to undergo group and individual therapy. Plaintiff continues to take medication and to undergo therapy to manage her symptoms. Even when taking medication, under periods of high stress, Plaintiff can experience the characteristic symptoms of bipolar disorder. The evidence further demonstrates that Plaintiff is stable and fully functional provided she takes her medication and receives therapy. There is no indication in the record that Plaintiff has suffered any significant problems related to her bipolar disorder following her discharges from the hospital and/or psychiatric center. Moreover, there is a lack of any evidence tending to suggest that Plaintiff is unable to care for herself or socialize because of her bipolar disorder.

■ Based on the foregoing, the Court finds that Plaintiff has failed to present sufficient evidence from which a fair-minded jury could reasonably conclude that she was substantially limited in her ability to care for herself or socialize at the time she was hired and/or fired by Defendant. *See Taylor,* 184 F.3d at 308 (noting that the plaintiff must show that she was "substantially limited during the [period] following her hospitalization, the time span when she [was hired and fired by the defendant]."). Plaintiff has not provided evidence sup-

porting her contention that she is unable to perform a major life activity that the average person in the general population can perform. Similarly, there is no evidence suggesting that she is significantly restricted as to the condition, manner, or duration under which she can perform the major life activities of caring for herself or socializing (or any other major life activity) as compared to the condition, manner, or duration under which the average person in the general population can perform those same activities. *See* 29 C.F.R. § 1630.2(j).

While the nature of Plaintiff's impairment is not insignificant, based upon the record before the Court, a fair-minded jury could only conclude that, considering the corrective measures taken by Plaintiff, the severity of her impairment is not substantial. Again, there is no evidence supporting the notion that her disorder has substantially negatively impacted any aspect of her life since her discharge from the psychiatric center in 1996. Moreover, although Plaintiff's disability is expected to continue indefinitely and she will be required to take medication and undergo therapy for the rest of her life, the evidence suggests that such medication and therapy have sufficiently countered the debilitating effects of her bipolar disorder such that it does not substantially interfere with her major life activities. Further, while Plaintiff states in her affidavit that "at times [or during periods of high stress] the treatment is not effective and I experience ... depression and mania which are typical of the illness," *See* Pl. Nov. 7, 2000 Dep., ¶ 10, these incidents appear to be isolated and sporadic—insufficient to substantially limit the major life activities of caring for herself and/or socializing. *See Oblas v. American Home Assurance Co.,* 199 F.3d 1323, 1999 WL 759026, at *1 (2d Cir.1999) (Table); *Sanders v. Arneson Prods., Inc.,* 91 F.3d 1351 (9th Cir.1996), *cert. denied,* 520 U.S. 1116, 117 S.Ct. 1247, 137 L.Ed.2d 329 (1997); *Vande Zande v.*

---

**4.** It is unclear when the other hospitalization     occurred.

*State of Wisconsin Dep't of Admin.*, 44 F.3d 538, 543 (7th Cir.1995) ("Intermittent, episodic impairments are not disabilities."). In any event, Plaintiff has failed to come forward with any evidence demonstrating that she is substantially limited in any major life activities during those times when her therapy does not work and she experiences some of the characteristic symptoms of bipolar disorder. *See id.* In fact, Plaintiff admitted at deposition that, provided she takes her medication, she is not limited in any major life activities. *See* Pl. Dep., p. 128; *see also Oblas*, 1999 WL 759026, at *1–2.

As to the major life activity of working, there is no evidence that Plaintiff was restricted in her ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. *See* 29 C.F.R. § 1630.2(j)(3). In her opposition papers, Plaintiff claims that, because she received Social Security benefits that require her to be "unable to engage in any substantial gainful activity," she has demonstrated that she is substantially limited in her ability to work. *See* 42 U.S.C. § 423(d). The Court is not persuaded.

The uncontroverted evidence in the record reveals that Plaintiff was capable of working in a class of jobs or broad range of jobs in various classes as compared to persons in the general population despite her disability. This is evidenced by her application to work for Defendant, her statement on her medical questionnaire and at deposition that she worked as a telemarketer prior to applying for the job with Defendant, *see* Pl. Dep., p. 16–17, and her statements at deposition that she had worked for the Rensselaer County Council for the Arts from March 1997 through October 1998, *see* Pl. Dep. at 80, she took the New York Civil Service keyboard specialist exam, and that she was working at the time of her deposition. *See* Pl. Dep., pp. 14, 86–87; *see also Holihan v. Lucky Stores, Inc.*, 87 F.3d 362, 366 (9th Cir.

1996), *cert. denied*, 520 U.S. 1162, 117 S.Ct. 1349, 137 L.Ed.2d 506 (1997). The evidence further demonstrates that Plaintiff did not leave any of her post-hospitalization/post-psychiatric center treatment jobs because of her disability, but due to personal reasons (such as her marriage) or job dissatisfaction. *See* Pl. Dep. at 17, 81. In light of these facts, the Social Security Administration's decision to afford Plaintiff disability benefits is not determinative. Again, the facts clearly reveal that Plaintiff is able to work and Plaintiff has failed to point to any evidence from which a fair-minded jury could reasonably conclude that she was substantially limited in her ability to work. In short, although Plaintiff suffers from a disability that may very well impact the major life activities of working, caring for herself, and/or socializing, there is insufficient evidence upon which a jury could conclude that such impact is substantial. Accordingly, the Court finds that Plaintiff does not qualify under the first definition of disability.

### (2) Record of Impairment

Plaintiff next argues that she is disabled within the meaning of the ADA because she has a record of bipolar disorder and that Defendant knew of such record prior to terminating her.

Even without a showing of substantial limitation of a major life activity, the ADA's definition of "disability" can be satisfied by "a record" of an impairment that substantially limits one or more major life activities. *See* 42 U.S.C. § 12102(2)(B) (1994). "The intent of this provision, in part, is to ensure that people are not discriminated against because of a history of disability." 29 C.F.R. pt. 1630 App., § 1630.2(k). According to the EEOC:

This part of the definition is satisfied if a record relied on by an employer indicates that the individual has or has had a substantially limiting impairment. The impairment indicated in the record must be an impairment that would substantially limit one or

more of the individual's major life activities.

*Id.* The record must be one that shows an impairment that satisfies the ADA; a record reflecting a plaintiff's classification as disabled for other purposes or under other standards is not enough. *Colwell,* 158 F.3d at 645.

Here, it is tempting to immediately conclude that Plaintiff has a record of impairment because she wrote on her medical questionnaire that she suffered from bipolar disorder, that she had been hospitalized twice for that disorder, that she continues to need medications and therapy to treat her disorder, and that she had received workers' compensation benefits. It is not enough, however, that there merely be a record of a disability. Rather, there must be a record of a disability that substantially limited a major life activity. *See id.* at 645–46.

In *Colwell,* for example, a police officer claimed that he had a record of disability based on his records reflecting that he suffered a cerebral hemorrhage that required thirty days hospitalization followed by six months of recuperation at home. The Second Circuit disagreed stating that:

> The fact of [plaintiff's] hospitalization does not establish a record of a *substantially limiting* impairment. . . . [Plaintiff']s hospitalization is certainly a *record* of an impairment, and the hemorrhage was certainly an impairment, but [plaintiff] was required to show that the impairment for which he was hospitalized was imposing a substantial limitation of one or more of his major life activities. . . . A jury could reasonably find that [plaintiff] was unable to work during his recuperation from the hemorrhage (one month in the hospital and six months at home), but a seven-month

impairment of his ability to work, with the non-particularized and unspecific residual limitations described on his police work, is of too short a duration and too vague an extent to be "substantially limiting."

*Id.* at 645–46 (emphasis in original).

Here, there is little doubt that Plaintiff's hospitalization limited her ability to work for that period of time during which she was in the hospital. However, absent any evidence of substantial residual limitations impacting a major life activity, a brief hospitalization in 1996, even considered together with the six weeks of psychiatric center care,[5] is insufficient to constitute a record of a disability that substantially limited Plaintiff's ability to engage in one or more of her major life activities. *See id.* at 646; *Sanders,* 91 F.3d at 1353 ("[Plaintiff's] temporary psychological impairment, from December 19, 1992 to April 5, 1993, with no residual effects after April 5, 1993, was not of sufficient duration to fall within the protections of the ADA as a disability."). Although the medical questionnaire indicated that Plaintiff continues to need medication and therapy, that record further reveals that the medication and treatment has effectively controlled her disorder and rendered her able to perform her major life activities. *See Sherman v. New York Life Ins. Co.,* 1997 WL 452024, at *3 (S.D.N.Y.1997). According to the Plaintiff's own statement on the questionnaire, she is "fully stable and fully functional with medication and therapy." *see* Audi. Aff., Exs. A and B; *see also Sherman,* 1997 WL 452024, at *3. Thus, although there is a record of a disability, there is no record of a disability that substantially limited any major life activities.[6] The Court, therefore, finds that Plaintiff has failed to proffer

---

**5.** There is no record of such psychiatric center care of which Defendants were aware at the time they decided to hire and/or fire Plaintiff.

**6.** At the time Plaintiff was terminated, Defendant did not know Plaintiff received Social Security benefits and, thus, her receipt of such benefits does not constitute a record of impairment that could have formed the basis of any adverse employment action.

sufficient evidence from which a fair-minded jury could reasonably conclude that she had a record of bipolar disorder that substantially limited a major life activity.

### (3) Regarded As Disabled

The final way for Plaintiff to fall under the ADA's definition of disability is for her to demonstrate that Defendant regarded her as suffering from a disability that substantially limited a major life activity. *See Colwell,* 158 F.3d at 646. Plaintiff has not alleged in her Complaint and has otherwise made no attempt to prove that Defendant regarded her as disabled within the meaning of the ADA. Accordingly, there is no basis upon which a jury could conclude that she was so regarded. Plaintiff, therefore, does not fall within this definition of disabled.

## III. CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff has failed to present sufficient evidence upon which a fair-minded jury could reasonably conclude that she is disabled within the meaning of the ADA and, thus, she is unable to establish a *prima facie* case of disability discrimination. Defendant's motion for summary judgment is, therefore, GRANTED IN ITS ENTIRETY and Plaintiff's Complaint is DISMISSED.[7]

**IT IS SO ORDERED.**

---

7. Having dismissed Plaintiff's federal claim at this early stage of the litigation, the Court declines to exercise supplemental jurisdiction over the remaining state law cause of action.

*See* 28 U.S.C. § 1367(c)(3); *see also Castellano v. City of New York,* 142 F.3d 58, 74 (2d Cir.), *cert. denied,* 525 U.S. 922, 119 S.Ct. 276, 142 L.Ed.2d 228 (1998).