**Althea Linzey JOHNSON, Plaintiff,**

v.

**CITY OF NEW YORK, New York City Board of Education, Nicola Genco, Mary Johnson, and Janice Stacy Washington, Defendants.**

No. 02CV1014SJFLB.

United States District Court, E.D. New York.

July 21, 2004.

Althea Linzey Johnson, Bronx, NY, Pro se.

Mario Frangiose, Office of the Corporation Counsel, City of New York, Nancy Jane Botta, Office of the Corporation Counsel, NYC Law Department, New York City, for New York City Board of Education, Michael Bonn, Nicola Genco, Mary Johnson, Janice Stacey Washington, NYC Board of Health, Defendants.

## OPINION & ORDER

FEUERSTEIN, District Judge.

### I. Introduction

*Pro se* plaintiff Althea Linzey Johnson ("plaintiff" or "Johnson") filed an amended complaint against defendants New York City Board of Education ("Board"), New York City Department of Health ("DOH"), and several individual employees of those agencies (collectively, "defendants"), alleging harassment and discrimination in violation of the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. §§ 12101 *et seq.* based upon her mental illness. Defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, the motion is GRANTED.

### II. Background [1]

Plaintiff, a registered nurse employed by the DOH, was assigned to Walton High School ("Walton") by her supervisor, Mary Johnson. Her responsibilities included, among other duties, assessing students' health needs, administering medication, determining when to contact Emergency Medical Services, and maintaining student medical records. During the 1996–1997 school year, various staff members of Walton filed complaints with DOH Regional Manager Janice Stacy Washington ("Washington") regarding plaintiff's inappropriate and erratic behavior. For example, plaintiff allegedly described her own mental problems to a suicidal student and made inappropriate comments to students regarding pre-marital sex and abortion.

In December 1996, Washington referred plaintiff to the Employee Assistance Program ("EAP"), which provides counseling to DOH employees with various problems. Plaintiff was advised that her participation in the EAP was not mandatory and that she would not suffer any adverse consequences for choosing not to participate in the program. The same month, plaintiff requested a change in assignment from

---

1. The facts are derived from defendants' Statement of Material Facts pursuant to Rule 56.1(a) of the Local Rules for the Eastern District of New York and the accompanying affidavits and other evidentiary material filed in support of the motion for summary judgment, as well as plaintiff's responses thereto.

Walton, and she was transferred to Wings Academy in January 1997. While at Wings Academy, plaintiff allegedly failed to follow DOH protocol by timely following up on students' medical problems and properly handling fecal specimens.

In September 1997, Washington assigned plaintiff to the Regional Office until an appropriate placement for the upcoming school year was found. Plaintiff subsequently requested and was granted a medical leave from work, and upon her return in December 1997, she was placed in another school. On December 14, 1999, plaintiff voluntarily resigned from her employment. This action was timely filed on August 28, 2002.

## III. Standard of Review

Summary judgment should not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material "if it might affect the outcome of the suit under the governing law." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir.2001). An issue of fact is genuine only if a jury could reasonably find in favor of the nonmoving party based on that fact. *Id.* The moving party bears the initial burden of establishing the absence of any genuine issue of material fact, after which the burden shifts to the nonmoving party to establish the existence of a factual question that must be resolved at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The trial court is required to construe the evidence in the light most favorable to the nonmoving party, and draw all reasonable inferences in its favor. *Id.* at 252, 106 S.Ct. 2505; *Cifarelli v. Village of Babylon*, 93 F.3d 47, 51 (2d Cir.1996).

The Second Circuit has recognized that direct evidence of discriminatory intent is rare, and often must be inferred from circumstantial evidence found in the pleadings. *Holtz*, 258 F.3d at 69. Thus, granting summary judgment motions in such cases should be done with an extra measure of caution, although if a discrimination case is void of genuine issues of material fact, summary judgment may be appropriate. *Id.* (*citing McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997)); *see also Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir.2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

A *pro se* plaintiff's submissions are held to less stringent standards than formal pleadings drafted by attorneys. *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (per curiam). Indeed, a court must "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). Nonetheless, a *pro se* plaintiff is not exempt from compliance with relevant rules of procedural and substantive law. *Traguth v. Zuck*, 710 F.2d 90, 92 (2d Cir. 1983).

## IV. Analysis

### A. The Americans with Disabilities Act

■ The ADA makes it unlawful for covered entities to "discriminate against a qualified individual with a disability because of the disability of such individual in regard to ... terms, conditions, and privileges of employment." 42 U.S.C.

§ 12112(a) (2004).[2] ADA claims must be examined under the three-step burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973):(1) Plaintiff must prove, by a preponderance of the evidence, a prima facie case of discrimination; (2) once plaintiff has established a prima facie case, the burden shifts to the defendant, who must demonstrate "a legitimate, nondiscriminatory reason" justifying the alleged improper employment action; and (3) if the defendant justifies its action, the plaintiff must demonstrate that the defendant's reasons are pretextual "either by the presentation of additional evidence showing that the employer's explanation is unworthy of credence, or by reliance on the evidence comprising the prima facie case, without more." *Heyman v. Queens Vill. Comm. for Mental Health*, 198 F.3d 68, 72 (2d Cir.1999); *see also Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d Cir.1998); *Hailey v. New York City Transit Auth.*, No. 02–3127, 2003 WL 22670891, at *5, 2003 U.S. Dist. LEXIS 20443, at *15 (E.D.N.Y. Oct. 20, 2003). To establish a prima facie case of discrimination based upon unequal terms and conditions of employment, a plaintiff must show that: (a) the employer is subject to the ADA; (b) she suffers from a disability within the meaning of the ADA; (c) there was an inference of discrimination; and (d) she suffered a materially adverse change in the terms or conditions of her employment. *Georgy v. O'Neill*, No. 00–660, 2002 WL 449723, at *11, 2002 U.S. Dist. LEXIS 4825, at *34 (E.D.N.Y. Mar. 22, 2002). Plaintiff alleges that she was subjected to unequal terms and conditions of employment because she was assigned to the Regional Office in September 1997 instead of placed in a school.

### a. ADA Coverage

Neither the DOH nor the Board dispute that they are subject to the ADA. Therefore, the next inquiry is whether plaintiff is disabled within the meaning of the statute.

### b. Disability Within the Meaning of the ADA

The regulations promulgated by the Equal Employment Opportunity Commission ("EEOC") under the ADA provide guidance in construing the statute. *Francis v. City of Meriden*, 129 F.3d 281, 283 n. 1 (2d Cir.1997). A mental "impairment" includes any psychological disorder, such as retardation, emotional illness, or specific learning disabilities. 29 C.F.R. § 1630.2(h)(2). It is undisputed that plaintiff's mental condition, depression and delusional psychosis, constitutes an impairment under the ADA. However, the question is whether plaintiff can prove a "disability" within the meaning of the ADA.

The ADA defines disability as: (i) a physical or mental impairment that substantially limits one or more of an individual's major life activities; (ii) a record of such an impairment; or (iii) being perceived or regarded as having such an impairment. 42 U.S.C. § 12102(2); *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 478, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999); *Schaefer v. State Ins. Fund*, 207 F.3d 139, 142 (2d Cir.2000). Regardless of whether a plaintiff's claim is based upon actual, recorded, or perceived disability, the disability at issue must be an impairment covered by the ADA. *Miller v. Taco Bell Corp.*, 204 F.Supp.2d 456, 458–59

---

**2.** Since there is no right of recovery against individual defendants under the ADA, *Corr v. MTA Long Island Bus*, 199 F.3d 1321, 1999 WL 980960, at *1 (2d Cir.1999), the claims against Nicola Genco, Mary Johnson, and Janice Stacy Washington are dismissed.

(E.D.N.Y.2002); *see also Colwell v. Suffolk County Police Dep't,* 158 F.3d 635, 645–46 (2d Cir.1998); *Horwitz v. L & J.G. Stickley, Inc.,* 122 F.Supp.2d 350, 357 (N.D.N.Y. 2000).

#### (i). Impairments that Substantially Limit Major Life Activities

A "major life activity" is defined as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Id.* § 1630.2(i). Assessing whether an impairment "substantially limits" a major life activity is an individualized and fact-specific inquiry. *Colwell,* 158 F.3d at 641. One who is "substantially limited" in a major life activity is either unable to perform such activity or "significantly restricted as to the condition, manner or duration" under which the activity can be performed "as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1). When determining whether a plaintiff has a disability, it is important to distinguish between impairments that only affect major life activities from those that substantially limit those activities. *Ryan v. Grae & Rybicki, P.C.,* 135 F.3d 867, 870 (2d Cir.1998); *Feeley v. New York City Police Dep't.* No. 97–2891, 2001 U.S. Dist. LEXIS 25431, at *19 (E.D.N.Y. Sept. 4, 2001); *Brower v. Continental Airlines, Inc.,* 62 F.Supp.2d 896, 903 (E.D.N.Y.1999). Accordingly, courts consider the nature and severity, duration or expected duration, and the long term impact of the impairment. 29 C.F.R. § 1630.2(j)(2).

■ Plaintiff has failed to offer any evidence that she is unable to perform a major life activity. Additionally, plaintiff has not demonstrated that she is significantly restricted as to the condition, manner, or duration under which she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. Plaintiff's own deposition testimony confirms this conclusion:

> Q. Between 1994 and 1997, the time that you worked at Walton, did your mental condition affect your daily functioning?
>
> A. Absolutely not.

(Pl.'s Dep. at 84). Accordingly, plaintiff cannot satisfy the first definition of disability.

#### (ii). Record of Such an Impairment

The second definition of "disability" requires "a record" of an impairment that substantially limits one or more major life activities. 42 U.S.C. § 12102(2)(B). Here, there is no record of a disability that substantially limits one of plaintiff's major life activities.

#### (iii). Being Regarded as Having Such an Impairment

■ Lastly, a disability can be proved by demonstrating that the plaintiff is "regarded as" having an impairment that substantially limits one or more major life activities. 42 U.S.C. § 12102(2)(C). In determining whether an individual is "regarded as" having a disability, the focus is "'on the employer's perception of the employee' and is therefore 'a question of intent, not whether the employee has a disability.'" *Colwell,* 158 F.3d at 646 (quoting *Francis,* 129 F.3d at 284). However, it is insufficient to show that the employer regarded the plaintiff as disabled in some manner. *Id.* Instead, a plaintiff must prove that the employer regarded him or her as disabled within the meaning of the ADA. *Id.*

■ To prove that she was regarded as substantially limited in her ability to work,

plaintiff bears the burden of demonstrating that her employer "perceived her to be incapable of working in a broad range of jobs" suitable for one of similar age, experience, and training. *Ryan v. Grae & Rybicki, P.C.,* 135 F.3d 867, 872 (2d Cir. 1998); *see also Colwell,* 158 F.3d at 647; *Romain v. Ferrara Bros. Bldg. Materials Corp.,* No. 97–4001, 2004 WL 1179352, at *3 (E.D.N.Y. May 28, 2004). Plaintiff has not offered any evidence to satisfy this burden. In fact, the DOH's employment actions establish that it did not perceive plaintiff to be incapable of working in a broad range of jobs suitable for her. Upon plaintiff's request for a change of assignment in December 1996, the DOH transferred her from Walton to Wings Academy, (Washington Decl. para. 5, 17); in September 1997, plaintiff was temporarily assigned to the Regional Office only until the DOH located an available and suitable placement for the 1997–1998 school year, (*Id.* para. 22); after plaintiff returned from her medical leave of absence in December 1997, she was placed in yet another school. (*Id.* para. 24). Since plaintiff has not proved that she was regarded as having an impairment that substantially limited one or more major life activities, she has not satisfied the third definition of disability.

Since plaintiff has not shown that she suffers from a disability within the meaning of the ADA, she cannot establish a prima facie case of disability discrimination.

c. Inference of Discrimination

■ The third prong of a prima facie case requires a showing that the employer treated similarly situated employees not in the protected group more favorably than plaintiff. *McGuinness v. Lincoln Hall,* 263 F.3d 49, 53 (2d Cir.2001); *Georgy v. O'Neill,* No. 00–0660, 2002 WL 449723, at

*11, 2002 U.S. Dist. LEXIS 4825, at *34 (E.D.N.Y. Mar. 22, 2002). "A discrimination plaintiff and other employees are similarly situated if they are employed in a position of comparable responsibilities and duties, and they have engaged in comparable conduct." *Partridge v. HIP,* No. 97–453, 2000 WL 827299, at *3, 2000 U.S. Dist. LEXIS 8714, at *7 (S.D.N.Y. June 26, 2000) (citing *Henry v. Daytop Village, Inc.,* 42 F.3d 89, 97 (2d Cir.1994)).

Plaintiff has not cited any similarly situated DOH employees, much less similarly situated DOH employees who were treated more favorably. Therefore, she has failed to establish the third prong of a prima facie case.

d. Materially Adverse Change

■ To be materially adverse, "a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Galabya v. New York City Bd. of Educ.,* 202 F.3d 636, 640 (2d Cir.2000) (quoting *Crady v. Liberty Nat'l Bank and Trust Co.,* 993 F.2d 132, 136 (7th Cir. 1993)). "'A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other induces ... unique to a particular situation.'" *Id.* (quoting *Crady,* 993 F.2d at 136). Since I find that plaintiff cannot establish her prima facie case, a determination of whether she suffered a materially adverse change in working conditions is unnecessary.

For the foregoing reasons, plaintiff has not proved a prima facie case of discrimination based upon disability. Even if plaintiff had established a prima facie case, defendants have "easily met [their] burden of demonstrating a legitimate, non-discrim-

inatory reason" for her reassignment by outlining her incompetence and inappropriate conduct, justifications which the plaintiff has not shown are pretextual. *Slattery v. Swiss Reinsurance America Corp.*, 248 F.3d 87, 93 (2d Cir.2001).

■ Plaintiff further alleges that she was subject to a hostile work environment. Although the Second Circuit has not determined whether the ADA gives rise to a cause of action for hostile work environments, *see Bonura v. Sears Roebuck & Co.*, 62 Fed.Appx. 399, 400 n. 3, 2003 WL 21024620, *1 n. 3 (2d Cir.2003), several district courts in this circuit have held that such claims are cognizable. *See, e.g., De La Cruz v. Guilliani*, No. 00–7102, 2002 U.S. Dist. LEXIS 19922, at *28 (S.D.N.Y. Aug. 23, 2002) (analyzing ADA hostile work environment claim under the same standard utilized in Title VII cases); *Hendler v. Intelecom USA, Inc.*, 963 F.Supp. 200, 208 (E.D.N.Y.1997) (same); *Hudson v. Loretex Corp.*, No. 95–844, 1997 WL 159282, at *2–3, 1997 U.S. Dist. LEXIS 4320, at *7–8 (N.D.N.Y. April 2, 1997) (same). A work environment is hostile " 'when the workplace is permeated with discriminatory intimidation, ridicule and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment.' " *Torres v. Pisano*, 116 F.3d 625, 630–31 (2d Cir.1997) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). When analyzing a hostile work environment claim, courts should consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 767–68 (2d Cir.1998). Generally, isolated incidents of harassment do not give rise to a hostile work environment claim; instead, the incidents must be " 'sufficiently continuous and concerted in order to be deemed pervasive.' " *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir.1997) (quoting *Harris*, 510 U.S. at 17, 114 S.Ct. 367). "However, where the conduct is sufficiently severe, it may alter the plaintiff's conditions of employment without repetition." *Quinn*, 159 F.3d at 768.

■ Plaintiff alleges that she was harassed by Connie Johnson, who "wanted to tell [plaintiff] what to do, correct [plaintiff] and hid medical charts away from [plaintiff]." (Am.Compl.para.8b). The following exchange during plaintiff's deposition reveals that Connie Johnson's actions were not discriminatory:

Q. Do you believe that Connie Johnson acted the way that she did because she perceived you to have mental problems?

A. I—I feel that, what do you call it— not necessarily mental problems, but my general demeanor, organizational demeanor, you know . . . .

Q. You don't necessarily relate it to your mental condition?

A. No, not necessar[il]y . . . in Connie. . . . I feel that this was her way because she did it to her nurses.

Q. Do you think that she discriminated against you because of your mental condition?

A. Not really, not wholly . . . .

(Pl.'s Dep. at 222–23). Moreover, the alleged conduct was not so severe or pervasive as to have altered plaintiff's working conditions. *See Oncale v. Sundowner Offshore Services*, 523 U.S. 75, 80–81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (noting the Supreme Court's desire to set the standards for a viable hostile work environment claim sufficiently high to prevent

converting Title VII into a "general civility code" for the workplace). At most, Connie Johnson's behavior "reflect[s] a clash of personalities more than discriminatory animus." *Shabat v. Blue Cross Blue Shield of the Rochester Area*, 925 F.Supp. 977, 982 (W.D.N.Y.1996), *aff'd sub. nom.*, *Shabat v. Billotti*, 108 F.3d 1370, 1997 WL 138836 (2d Cir.1997) (table opinion). In light of plaintiff's repeated instances of unprofessional behavior, which included the removal of confidential files from the medical office, the safeguards taken to protect medical charts did not create a hostile work environment. *See Ragusa*, 1998 U.S. Dist. LEXIS 12697, at *14 (extensive supervision not a hostile work environment where plaintiff's poor performance was well-documented).

And contrary to plaintiff's claim, the referral to the EAP was not severe or pervasive enough to alter the conditions of plaintiff's employment. Plaintiff was not required to enroll in the program and her employment was unaffected by her failure to do so.

Therefore, the conduct complained of is insufficient to establish a hostile work environment claim.

V. Conclusion

For the reasons set forth above, defendants' motion for summary judgment is GRANTED and plaintiff's complaint is dismissed in its entirety. The Clerk of Court is directed to close this case.

IT IS SO ORDERED.