Kimberly BATKA Plaintiff,

v.

**PRIME CHARTER, LTD. Defendant.**

**No. 02 Civ.6265 VM.**

United States District Court,
S.D. New York.

Feb. 4, 2004.

Ralph A. Somma, Somma, Zabell & Associates, L.L.P., Farmingdale, NY, for plaintiff.

Joseph DaProcida, Fahnestock & Co., Inc., New York, NY, for defendant.

## DECISION AND ORDER

MARRERO, District Judge.

Plaintiff Kimberly Batka ("Batka") brings this action against her former employer, Prime Charter, Ltd. ("Prime Charter") alleging discrimination on the grounds of gender and pregnancy in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), and the corresponding New York State and New York City statutes; and violation of her rights under the Family Medical Leave Act of 1993 ("FMLA"). Batka claims that while she was on FMLA leave following the birth of her child, Prime Charter wrongfully terminated her. Prime Charter counters that its reasons for terminating Batka were non-discriminatory and moves this Court to grant summary judgment against Batka on all her claims. The Court finds that the evidence contained in the record raises genuine issues of material fact as to Prime Charter's motives for terminating Batka. Accordingly, Prime Charter's motion for summary judgment is denied.

## I. BACKGROUND [1]

1. The factual summary presented herein derives primarily from the following documents:

Prime Charter, a securities firm head-quartered in New York, hired Batka to work in its Compliance Department in November 1997.[2] Batka was responsible for, among other things, the out-of-state registration of the stock brokers in Prime Charter's New York and Florida offices. Batka claims that she began receiving quarterly raises shortly after commencing her employment. In April of 1999, Prime Charter hired James Gianni ("Gianni") as its new Director of Compliance. When Batka's immediate supervisor resigned in October 1999, Batka was promoted, granted another increase in salary, and began reporting directly to Gianni. In her new position, Batka assumed most of her former supervisor's responsibilities. According to Batka, she performed her duties satisfactorily, occasionally receiving praise for her good work, along with the periodic increases in salary.

On or about December of 2000, Batka informed Gianni that she was pregnant and that she would be taking maternity leave around the time of the birth of her child. Batka further informed Gianni that she intended to return to Prime Charter at the end of her maternity leave. According to Batka, once she notified Gianni that she was pregnant, Gianni became antagonistic toward her and critical of her work product. Batka claims that Gianni would have Batka's part-time assistant, Stephanie Napolitano ("Napolitano"), re-do the work Batka had already performed when there was no need to do so.

On May 15, 2001, Batka informed Prime Charter's Vice President of Human Resources, Kathleen Coakley ("Coakley"), that due to medical necessity, her maternity leave would commence on that day. Batka further informed Coakley that she planned on returning to work on or about August 13, 2001, which gave Batka some time on leave under the FMLA. Coakley had previously provided Batka with a memorandum outlining her benefits under the FMLA and other conditions during her leave. Around the time of Batka's departure on maternity leave, Prime Charter hired Napolitano as a full-time employee and gave her most of Batka's responsibilities.

While Batka was out on maternity leave, approximately two weeks prior to her anticipated return date, Prime Charter sent Batka a severance package. When Batka called Coakley to inquire why she was being terminated, Coakley responded that her termination was a result of staff reductions brought on by the downturn in the economy. Coakley did not mention to Batka that work performance was a factor in the decision to terminate her employment.

Batka's discrimination claims center on her termination during her FMLA leave. According to Batka, Prime Charter discriminated against her based on her gender and/or pregnancy in violation of Title VII; and violated her rights under the FMLA. To buttress her claim that she was a good performer and that her termination was induced by a discriminatory bias, Bat-

Complaint, *Batka v. Prime Charter, Ltd.*, No. 02 Civ. 6265, dated Aug. 2, 2002; Answer of Defendant, Prime Charter, Ltd., dated Oct. 11, 2002; Memorandum of Law in Support of Defendant's Motion for Summary Judgment, dated Aug. 26, 2003 with accompanying Exhibits and Affidavits; Defendant's Revised Statement of Material Facts Pursuant to Local Civil Rule 56.1, dated Aug. 29, 2003; Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, dated Oct. 3, 2003; Plaintiff's Counter Statement of Facts Pursuant to Local Rule 56.1, dated Oct. 3, 2003; Defendant's Reply Brief in Further Support of Motion for Summary Judgment, dated Oct. 23, 2003 ("Reply"). Except where specifically referenced, no further citation to these sources will be made.

2. Prime Charter terminated its business operations in December 2001 when it was acquired by Fahnestock & Co., Inc.

ka points to her promotion approximately two years after she was hired, to her periodic pay raises, and to the absence of any negative performance evaluations or complaints communicated to her.

In support of its motion for summary judgment, Prime Charter counters that discrimination was not a factor in its decision to terminate Batka. Rather, Prime Charter asserts that Batka's termination was a result of staff reductions prompted by the economic downturn in the financial sector in 2000 and 2001. Prime Charter further argues that Batka was one of 23 employees terminated during this period of downsizing and that she was selected due to her alleged poor performance in carrying out her responsibilities.

In support of its allegation that Batka was a poor performer, Prime Charter submits various affidavits of its employees, including those of Gianni and Coakley, attesting that they received complaints regarding the timeliness of Batka's work and some instances when Batka was careless in carrying out her assignments. Prime Charter further asserts that Batka had a problem with absenteeism. During her employment with Prime Charter, Batka never received any written evaluation of her work or a performance review, as it was Prime Charter's policy not to issue such evaluations to its employees. Prime Charter explains that Batka's periodic raises were not performance-based, but rather, were part of firm-wide salary increases.

To support its claim that Batka's dismissal was part of a firm-wide effort to cut costs, Prime Charter submits articles and documents to demonstrate that the financial sector was beset with significant economic losses in the period of 2000–2001, which prompted wide-spread layoffs throughout the industry. As a further indicator of the times, Prime Charter also provides documentation that several of its high-level employees took reductions in salary during the same period. Prime Charter explains that despite the downsizing, Napolitano was hired as a full-time employee during Batka's absence because Napolitano was a stellar performer and her services were needed on a full-time basis to assume Batka's responsibilities in her absence.

With regard to Batka's allegations as to how Gianni treated her, Gianni denies that he changed his attitude toward Batka once he was notified of her pregnancy. (*See* Affidavit of James Gianni In Support Of Defendant's Motion For Summary Judgment, dated Aug. 26, 2003 ("Gianni Aff."), at ¶ 4.) Gianni explained at his deposition that when Batka notified him that she would be taking maternity leave, he merely diverted his attention away from Batka and toward Napolitano because he knew that Napolitano would be assuming Batka's responsibilities in her absence. (*See* Transcript of Deposition, James A. Gianni, June 18, 2003 ("Gianni Dep."), at 97:4–12; 98:17–22.)

In her complaint, Batka seeks monetary and injunctive relief based on alleged gender/pregnancy discrimination arising from her termination in August 2001 in violation of her rights under Title VII, 42 U.S.C. §§ 2000e *et seq.;* the New York State Human Rights Law ("NYSHRL"), New York Exec. Law § 296 *et seq.* (McKinney 1993 & 2001 Supp.); the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8–107 *et seq.;* and the FMLA, 29 U.S.C. §§ 2601 *et seq.* Pending before the Court is Prime Charter's motion for summary judgment on all of her claims.

## II. *DISCUSSION*

### A. *STANDARD FOR SUMMARY JUDGMENT*

The Court may grant summary judgment only "if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court must first look to the substantive law of the action to determine which facts are material; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Even if the parties dispute material facts, summary judgment will be granted unless the dispute is "genuine," *i.e.*, "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249, 106 S.Ct. 2505.

The moving party bears the initial burden of demonstrating that the evidence contained in the record fails to raise a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). After such a showing, the non-moving party must respond with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). To this end, "[t]he non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir.1998). In other words, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as

to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Throughout this inquiry, the Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *See Schneider v. Feinberg*, 345 F.3d 135, 144 (2d Cir.2003). The Court's role is to determine whether there are triable issues of fact, and not to resolve such disputed matters. *See Anderson*, 477 U.S. at 249, 106 S.Ct. 2505; *Gibson v. American Broadcasting Cos.*, 892 F.2d 1128, 1132 (2d Cir.1989).

**B.  *BATKA'S TITLE VII CLAIM***

Title VII provides in relevant part that "[i]t shall be an unlawful employment practice for an employer—... to discharge any individual, ... because of such individual's ... sex,...." 42 U.S.C. § 2000e–2(a)(1). In the instant case, Batka alleges that Prime Charter terminated her employment because of her gender and pregnancy.[3]

Where, as in this case, the evidence of the alleged unlawful discrimination is only circumstantial, the sufficiency of a Title VII discrimination claim is assessed under the three-step burden-shifting analysis enunciated by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–805, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[4] Under this framework, the plaintiff must first make out a prima facie case of discrimination. *See id.* at 802, 93 S.Ct. 1817;

---

3. The Pregnancy Discrimination Act amended the Title VII definition of "because of sex" to specifically include "because of or on the basis of pregnancy, childbirth, or related medical conditions;...." 42 U.S.C. § 2000e(k); *see also Saks v. Franklin Covey. Co.*, 316 F.3d 337, 343 (2d Cir.2003).

4. Claims of employment discrimination brought under the NYSHRL and the NYCHRL are analyzed under the same *McDonnell Douglas* framework as Title VII claims. *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 n. 1 (2d Cir.2000).

*see also Cifra v. General Electric Co.,* 252 F.3d 205, 216 (2d Cir.2001). A plaintiff makes out a prima facie case by showing that (1) she is a member of a protected class; (2) she is qualified for the position in question; (3) she suffered an adverse employment action; and (4) the surrounding circumstances give rise to an inference of discrimination based on the plaintiff's membership in the protected class. *See Mario v. P & C Food Mkts., Inc.,* 313 F.3d 758, 767 (2d Cir.2002); *see also Thomas v. Westchester County Health Care Corp.,* 232 F.Supp.2d 273, 278 (S.D.N.Y.2002). The plaintiff's burden in establishing a prima facie case is *"de minimis."* *Zimmermann v. Assocs. First Capital Corp.,* 251 F.3d 376, 380–81 (2d Cir.2001) (citations omitted); *see also McGuinness v. Lincoln Hall,* 263 F.3d 49, 53 (2d Cir.2001).

■ If the plaintiff makes out a prima facie case, there is a presumption of discrimination and the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If the defendant meets this burden, the presumption of discrimination is rebutted and the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the defendant's proffered reasons were merely a pretext for discrimination and that its conduct under the circumstances gives rise to an inference of unlawful discrimination. *See Burdine,* 450 U.S. at 253, 101 S.Ct. 1089; *Roge v. NYP Holdings, Inc.,* 257 F.3d 164, 168 (2d Cir.2001). Nonetheless, through all steps of this assessment, the

evidence the plaintiff presents in opposing summary judgment must be sufficient to demonstrate the discriminatory intent underlying the defendant's action. Thus, "[i]t is important to note, ... that although the *McDonnell Douglas* presumption shifts the burden of *production* to the defendant, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.' " *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (quoting *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089) (italics in original).

The Court considers the evidence in the record within the *McDonnell Douglas* framework.

### 1. Batka's Prima Facie Case

There is apparently no dispute between the parties that Batka has satisfied the first and third elements of her prima facie case, *i.e.,* she is a member of a protected class and has suffered an adverse employment action. With regard to the second element, Prime Charter has not challenged Batka's qualifications for her position, despite its allegations of poor performance.[5] Thus the Court addresses only the fourth element with any degree of detail.

■ In its motion papers, Prime Charter argues that Batka has not met her initial burden of establishing a prima facie case because she cannot satisfy the last element, namely, that the circumstances of her termination give rise to an inference of discrimination. The Court does not agree. Viewing the allegations and the evidence in the record in a light most favorable to

**5.** Prime Charter has established that Batka was less than truthful regarding her education when she applied for her position. (*See* Affidavit of Kathleen A. Coakley, dated Aug. 26, 2003 ("Coakley Aff."), at ¶ 5 and Ex.

B.) The Court, however, construes this as an attack on Batka's credibility, rather than on her qualifications. Prime Charter does not argue to the contrary in its motion and reply submissions.

314

Batka, the Court finds that she has satisfied her burden of making a prima facie case of discrimination. Consideration of the surrounding circumstances of Batka's dismissal could lead to a reasonable inference that discrimination played at least some role in Prime Charter's decision. Specifically, the uncontested fact that Batka received salary increases and a promotion during her tenure at Prime Charter; Prime Charter's hiring of a full-time replacement during her absence; and the timing of her dismissal undermine Prime Charter's contention that Batka was terminated because she was a poor performer. Because Batka's burden at this stage is minimal, the Court is persuaded that she has established a prima facie case giving rise to a presumption of employment discrimination under *McDonnell Douglas*.

### 2. Prime Charter's Non–Discriminatory Reasons

■ Batka having established her prima facie case, the burden shifts to Prime Charter to put forth a non-discriminatory reason for the adverse employment action. To meet this burden, Prime Charter submits evidence to suggest that the decision to dismiss Batka was based on the need to reduce staff in response to a weak economy during the relevant period. The evidence submitted indicates that Batka was one of 23 employees who were terminated during this time. Prime Charter argues that she was selected to be terminated on the grounds that her performance on the job was unsatisfactory. At this point in the analysis, Prime Charter need only proffer some non-discriminatory reason for its actions. There is no need to assess the credibility of the proffered reason at this stage nor does Prime Charter have to show that it actually relied on these reasons. *See Hicks*, 509 U.S. at 509, 113 S.Ct. 2742; *Farias v. Instructional Sys.*, 259 F.3d 91, 98 (2d Cir.2001) (citing *Burdine*, 450 U.S. at 254, 101 S.Ct. 1089). Accord-

ingly, the Court finds that Prime Charter has met its burden of rebutting the presumption of discrimination.

### 3. Batka's Burden to Show Pretext

■ The burden now shifts back to Batka to show that the proffered reasons were more likely than not a pretext for unlawful discrimination. It is at this final stage of the analysis where the heart of the parties' dispute lies, namely, the determination of Prime Charter's true intent when it took the adverse action against Batka. Unfortunately, as is common in employment discrimination cases, on the record the parties have presented, there is a dearth of objective evidence bearing on this question. In reviewing the evidence, the Court is left mostly to unravel the classic "he-said, she-said" battle, here depicted primarily in the form of affidavits rather than deposition testimony. Nevertheless, the Court undertakes this task with a focus on the uncontested facts and surrounding circumstances and mindful that for purposes of the instant motion, it is only to determine whether a genuine issue of material fact exists after viewing the evidence in a light most favorable to Batka and after giving her the benefit of all reasonable inferences. In showing pretext in the final step of the *McDonnell Douglas* analysis, Batka may carry her burden "by reliance on the evidence comprising the prima facie case, without more." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 79 (2d Cir.2001) (citing *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir.1995)).

Upon review of the record as a whole, the Court is persuaded that Batka has raised a genuine issue of material fact regarding Prime Charter's motives for dismissing her. Instrumental in this holding is the uncontested fact that Batka was promoted in October 1999 and received

raises even though Gianni testified as his deposition that he received complaints regarding Batka's work prior to this date. (*See* Gianni Dep. at 23:11–14; 25:17–26:17; 30:6–12.) Although Prime Charter argues that these raises were firm-wide and not performance-based, a reasonable fact-finder could conclude that Prime Charter was in no way obligated to offer raises (and much less a promotion) to an underperforming employee.

Moreover, the Court is not persuaded that the evidence contained in the record bearing on the issue of Batka's work performance so firmly establishes Prime Charter's proffered reason for the discharge to the point that there are no genuine issues of material fact. For example, Gianni was at times vague as to the details of the alleged complaints and the identity of the complainants; and he admitted that even after Batka began reporting directly to him, he did not directly review her work. (*See id.* at 25:14–27:3; 30:10–24; 33–22–34:3; 64:12–65:7.) Also, Gianni testified that after receiving the alleged complaints, he never formally discussed them with Batka (aside from informal inquiries) and he never independently investigated the alleged complaints. (*See id.* at 31:3–11; 32:25–33:8; 44:8–16; 45:2–9.) Finally, it is undisputed that when Batka called Coakley to inquire as to why she was being terminated, Coakley's only proffered reason was the need to reduce staff; no mention was made of work-performance issues. From these facts, the Court finds that Batka has raised triable issues as to whether Prime Charter discriminated against her.

The Court also finds that Prime Charter's decision not to memorialize any of these alleged deficiencies in Batka's work performance and the resulting lack of contemporaneous pre-litigation documentation on this question raises a genuine issue of material fact as to whether discrimination played a role in its decision to terminate her. In its reply brief, Prime Charter argues that Batka's opposition papers contain "unsupported self-serving statements" that do not raise any genuine issues of fact. (Reply at 1.) The Court notes that substantially all of Prime Charter's evidence on this question rests on the affidavits of its employees, arguably self-serving statements onto themselves, albeit made under penalty of perjury.[6] In short, as far as the Court can discern from the record, all the evidence supporting Prime Charter's claim that Batka was not performing satisfactorily surfaced after this action was commenced. The Court does not suggest that this observation is fatal to ultimately defeat Batka's claim of discrimination. Rather, the Court finds that such evidence fails to eliminate genuine issues of fact raised by Batka. Accordingly, the Court concludes that triable issues of fact exist as to Prime Charter's intent in taking the adverse employment action Batka alleges.

■ The Court has no basis to doubt that Prime Charter, like many other firms in the financial sector, may have experienced the ill-effects of the declines that struck the securities markets in the United States in 2000 and 2001. Nor does the Court have any grounds to question Prime Charter's decision to reduce its staff in response to such a downturn in business. Prime Charter's evidence clearly estab-

---

**6.** The Court further notes that many of the statements in Prime Charter's affidavits regarding alleged third-party complaints about Batka's work constitute hearsay, which would likely not be admissible at trial. *See* Fed. R.Civ.P. 56(e) (stating that affidavits "shall be made on personal knowledge, [and] shall set forth such facts as would be admissible in evidence, . . . ."); *see also Burdine,* 450 U.S. at 255 n. 9, 101 S.Ct. 1089 ("An articulation [of a non-discriminatory reason for an adverse employment action] not admitted into evidence will not suffice.").

lishes that perfunctory lay-offs were a common occurrence in the securities industry at that time. The question before the Court, however, is not whether unlawful discrimination was the sole reason Prime Charter took the adverse employment action. Rather, the issue is whether, on the evidence contained in the record, a rational jury could find that despite any legitimate grounds it may have had, unlawful discrimination played a motivating role in Prime Charter's decision to take the adverse action. As the Second Circuit has explained:

> To defeat summary judgment within the *McDonnell Douglas* framework, ..., the plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the motivating factors.

*Holtz,* 258 F.3d at 78 (internal quotations and citations omitted); *see also Sutera v. Schering Corp.,* 73 F.3d 13, 17 (2d Cir. 1995). Thus, Prime Charter's evidence that Batka was but one of several employees terminated in the relevant time period may establish that the need to reduce staff was certainly a factor in Batka's termination. That alone, however, does not eliminate the factual issue of whether unlawful discrimination also played a role. *See Carlton v. Mystic Transp., Inc.,* 202 F.3d 129, 136 (2d Cir.2000) (stating that even within legitimate staff reductions, an employer may not discriminate when selecting employees to be terminated) (citation omitted).

Although the evidence is hardly overwhelming for either side, the Court finds that Batka has met her burden at this final step in the burden-shifting analysis sufficient to raise triable issues of fact. Thus, the determination as to whether Prime Charter considered Batka's gender and/or pregnancy in deciding to terminate her is properly left to a trier of fact who can determine what weight, if any, to accord the competing evidence in the record. *See Gallo v. Prudential Residential Servs., Ltd. Partnership,* 22 F.3d 1219, 1224 (2d Cir.1994) ("A trial court must be cautious about granting summary judgment to an employer when, ... its intent is at issue.") (citations omitted).

Accordingly, Prime Charter's motion for summary judgment on Batka's Title VII claim, and her claims under the corresponding provisions of the NYSHRL and NYCHRL, is denied.

### C. BATKA'S FMLA RETALIATION CLAIM

Under the FMLA, an eligible employee is entitled to take up to 12 weeks of unpaid leave in any 12–month period "[b]ecause of the birth of a son or daughter of the employee...." 29 U.S.C. § 2612(a)(1)(A). Upon return from a FMLA leave, the employer is required to reinstate the employee to the same or equivalent position the employee had at the time the leave commenced. *See* 29 U.S.C. § 2614(a)(1). The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1) (" § 2615(a)(1)"). Batka claims that Prime Charter unlawfully retaliated against her for exercising her FMLA rights by terminating her while on leave in violation of § 2615(a)(1). Prime Charter argues that an employee on FMLA leave is not immune from an adverse employment action if the action was prompted by legitimate business concerns. Relying on the affidavits of its employees, Prime Charter asserts that it has shown a legitimate business concern and thus, that there is no genuine issue of material fact on this question. The Court does not agree.

Prime Charter is correct that an employee on FMLA leave is not entitled to

the "accrual of any ... employment benefits during any period of leave; ...," and thus, the employee remains susceptible to discharge for a non-discriminatory reason. 29 U.S.C. § 2614(a)(3)(A). This argument, however, presupposes that the employer's reasons for terminating the employee were entirely lawful. Prime Charter's intent in terminating Batka is at the heart of the present inquiry. Thus, it may not rely on this FMLA provision in seeking summary judgment on this point. In this regard, the analysis of whether there is a genuine issue of material fact with regard to Batka's FMLA claim is similar to the analysis under her Title VII claim.

In her opposition brief, Batka correctly points out that the Second Circuit has not ruled on the legal standard applicable to a FMLA retaliation claim. *See Hale v. Mann,* 219 F.3d 61, 70 (2d Cir.2000) (declining to decide whether *McDonnell Douglas* applies to a FMLA retaliation claim). The alternative standard that some courts have applied to claims under § 2615(a)(1) dispenses with burden-shifting and merely requires Batka to show that (1) she participated in a FMLA-protected activity, and (2) the decision to terminate her was motivated by the FMLA participation. *See, e.g., Bachelder v. America West Airlines, Inc.,* 259 F.3d 1112, 1124 (9th Cir.2001); *Mann v. Mass. Correa Electric, J.V.,* No. 00 Civ. 3359, 2002 WL 88915, at *7 (S.D.N.Y Jan. 23, 2002).

▮ The Court finds it unnecessary to decide which standard should be applied in this case. Having determined that Batka satisfies the more rigorous *McDonnell Douglas* burden-shifting analysis, the Court finds that she also satisfies the standard articulated in *Bachelder. See Darboe v. Staples, Inc.,* 243 F.Supp.2d 5, 16 (S.D.N.Y.2003) ("Because plaintiff establishes that a genuine issue of material fact exists under the more rigorous *McDonnell*

*Douglas* analysis, he has also established that a genuine issue of material exists under the standard enunciated in *Bachelder* and *Mann.*"). Accordingly, Prime Charter's motion for summary judgment on Batka's FMLA retaliation claim is denied for substantially the same reasons that the Court denies summary judgment on her Title VII claim.

For the foregoing reasons, the Court concludes that issues of material fact exist from the evidence in the record that a discriminatory bias played at least some role in Prime Charter's decision to terminate Batka. Accordingly, Prime Charter's motion for summary judgment is denied.

### III. *ORDER*

For the reasons set forth above, it is hereby

**ORDERED** that Prime Charter Ltd.'s ("Prime Charter") motion for summary judgment is **DENIED.**

**SO ORDERED.**